## Rothermel, Sheriff, etc., *versus* Marr.

1. Where an attachment is issued under the provisions of the Act of March 17th 1869, Pamph. L. 8, the sheriff is not thereby authorized to attach the goods of any person other than the defendant. He may not seize the goods of a garnishee named therein, and if he does so he will be liable in trespass, no matter what the event of the suit may be between the plaintiff and the defendant.

[Rothermel *v.* Marr.]

2. The bond required by section 1 of said act to be filed by the plaintiff prior to the issuing of the attachment enures as a security only to the defendant in the attachment and not to the garnishee. Hence the filing thereof does not justify the sheriff in seizing the goods of the garnishee.

3. Where, in such case, the plaintiff directs the seizure of goods claimed by some person other than the defendant, the proper course for the sheriff to pursue is either to demand a bond of indemnity or to have an order made by virtue of the provisions of the Act of January 30th 1871, Pamph. L. 12, upon the plaintiff and the claimant of the goods for an interpleader.

4. A. lived with his sister B., in a dwelling and store belonging to B. He kept shop in the store, and from time to time B. loaned him money for which he gave her judgment notes which were duly entered up. Subsequently, to secure his indebtedness to B., A. executed a bill of sale of the whole stock of the store to her, an inventory and appraisement being attached. The sign was changed from A.'s name to B.'s and all bills were made out in the name of B. A., however, continued to attend to the store, assisted by B. Certain creditors of A. having issued an attachment against him under the provision of the Act of March 17th 1869, Pamph. L. 8, the stock of the store was seized upon by the sheriff and sold, whereupon B. brought trespass against him. *Held,* that the question was properly submitted to the jury whether or not there had been sufficient transfer of possession from A. to B. to pass the title to B. as against the creditors of A.

June 9th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Northumberland county :* Of May Term 1880, No. 121.

Trespass, by Margaret H. Marr against Samuel H. Rothermel, late sheriff of Northumberland county, for seizing, taking away, and selling personal property belonging to the plaintiff. The defendant pleaded not guilty, and a special plea in confession and avoidance, justifying under the authority of a writ of attachment issued by the Court of Common Pleas under the Act of March 17th 1869 (P. L. 8) wherein Wainwright & Co. were plaintiffs and A. P. Marr was defendant, and the said Margaret H. Marr (plaintiff herein) was named as garnishee, commanding the sheriff to attach the goods of A. P. Marr in the hands of Margaret H. Marr, and summon the said garnishee, &c.

On the trial, before ROCKEFELLER, P. J., the evidence was to the following effect : A. P. Marr resided with his sister Margaret H. Marr, in a dwelling and store belonging to her in the borough of Milton. In 1871, A. P. Marr began to keep a grocery in the store. Margaret at that time loaned him $1,000 and subsequently other sums amounting to $548.83, for which amounts he gave her his judgment notes, on which she caused judgments to be entered in 1871 and 1873. A. P. Marr subsequently, on December 27th 1873, in order to secure this indebt-

[Rothermel *v.* Marr.]

edness to his sister, executed to her a bill of sale of all the goods in the store, appraised by an inventory annexed at $1,087.30.   He continued to attend to the business of the store, assisting his sister.   A new sign was put up in front of the store bearing the words, " Margaret H. Marr's grocery store." After the sale, bills were made out in the name of Margaret H. Marr, and paid by her.

On March 2d 1874, an attachment was issued under the Act of 1869, at the suit of Wainwright & Co., against the said A. P. Marr, with a clause of scire facias against Margaret H. Marr, garnishee.   The usual affidavit and bond were filed, the condition of the latter being " that if the aforesaid Wainwright & Co., plaintiffs in the attachment to be issued, shall fail to prosecute their action with effect, and shall fail to recover a judgment against the said A. P. Marr, the defendant, that they, the above bounden Wainwright & Co. and Thomas Swenk, shall and will pay to the said A. P. Marr, the defendant, all legal costs and damages which he, the said A. P. Marr, the defendant, may sustain by reason of said attachment."   This attachment was placed in the hands of the defendant, S. H. Rothermel, sheriff, who, on March 3d 1874, served it on A. P. and Margaret H. Marr on the premises; they both informed him that the goods were not A. P. Marr's, but belonged to Margaret H. Marr.   The sheriff, notwithstanding, levied on the goods and closed up the store.   He suggested to Margaret that she should give him a bond to release the goods.   This she declined to do, whereupon the sheriff removed the goods, sold under an order of the court such as were perishable, and subsequently, without any other writ than the attachment, sold the whole stock, under the instructions of Wainwright & Co.   Margaret H. Marr did not appear to the suit in attachment.

Margaret H. Marr afterwards brought this suit in trespass against the sheriff to recover the value of her goods sold by him.   On the trial, the plaintiff gave evidence of the abovementioned facts, and showed that the attachment suit was suffered to remain without any steps taken to prosecute it to judgment for over five years ; no declaration was filed until November 12th 1879, and on January 1st 1880, the plaintiff was nonprossed under rule of court.

The plaintiff contended that the sale by A. P. to Margaret H. Marr in December 1873, was without consideration and fraudulent as against the attaching creditor, and that there was no sufficient change of possession.   The court submitted the evidence on these questions to the jury, and, in reply to numerous points presented by the plaintiff and defendant, charged the jury that the writ of attachment only authorized the sheriff to

seize property belonging to the defendant A. P. Marr, and that if they found the sale to Margaret H. Marr in December 1873, was *bona fide* and accompanied by sufficient delivery of possession, and that the property belonged to her at the time of the seizure, the writ was not a justification for the seizure.

Verdict and judgment for the plaintiff for $1,352. The plaintiff took this writ, assigning for error, substantially, the instructions of the court to the jury as above.

*William A. Sober*, for the plaintiff in error.—We contend that in default of appearance or defence by Margaret H. Marr to the attachment suit against A. P. Marr, in which suit she was named as garnishee, she is not entitled to bring trespass against the sheriff, but is remitted to her remedy on the bond, which was given according to the requirements of the Act of 1869, "for the use of any party injured." But even if the action be maintainable, the writ of attachment is a complete justification. The affidavit and bond having been given to the satisfaction of the prothonotary, who issued the writ, directed to the sheriff, the latter officer obeyed the injunction of the writ by serving it on the garnishee, and attached in her hands property believed to belong to the defendant. The sheriff's duty under the act is ministerial and mandatory. The object of the act is to defeat the fraudulent acts of debtors, and the responsibility of proving fraud rests not with the sheriff. If the property seized does not in fact belong to the defendant but to the garnishee, it is the duty of the latter to appear to the attachment, and make his claim, which will be determined under legal proceedings before the court. A mere verbal statement of the garnishee to the sheriff at the time of the seizure will not supersede the mandate of the writ and the instructions of the plaintiff's counsel, under which the sheriff acts. The act which authorizes the attachment protects the rights of the defendant and the garnishee by requiring the plaintiff to execute a bond, with surety to be approved by the prothonotary, conditioned for the prosecution of the action with effect, which bond remains in the office of the prothonotary for the use of any party injured. The defendant or the garnishee may move to dissolve the attachment, or may retain possession by giving security to be approved by the court. The very object of the attachment was to determine the question of the alleged fraudulent sale of the goods in dispute, which was a question for the court and not for the sheriff to inquire into. The court could not act until the writ had been served by the sheriff. The garnishee was warned by this proceeding *in rem* to come in and assert her title, if any she had. Such action by the garnishee is clearly

[Rothermel *v.* Marr.]

contemplated by the act, which provides for notice to garnishee. The writ of attachment was a complete justification to the sheriff for all acts honestly performed in the line of his duty thereunder. He is liable only for an abuse of his trust, and even then not in an action of trespass, but on the case: Ricketson *v.* Com'th, 1 P. F. Smith 155; Penna. R. R. Co. *v.* Pennock, Id. 244; 2 Smith's Lead. Cas. 825, et seq.

*Franklin Bound* and *S. P. Wolverton,* for the defendant in error.—We do not dispute that the sheriff was bound by the exigency of the writ, but the attachment commanded him to seize only the "property of said party defendant," and if said property be found in the hands of another person, to summon such person as garnishee. In this case, the sheriff had full notice that the goods he seized were not the property of the defendant, but belonged to Margaret H. Marr, in whose possession they were. The sheriff could have protected himself from liability by demanding indemnity from the plaintiff, or insisting upon an interpleader. Omitting these precautions, he chose to determine the title of the property himself, and seized the goods of Margaret H. Marr against her protest. Such action was in excess of the command of the writ, and the writ of attachment in such case furnishes no more justification to an action of trespass by the party aggrieved than if the seizure had been made under a writ of fi. fa. The bond required by the act is not intended for the benefit of the garnishee. Its only condition is that if the plaintiff shall fail to prosecute his action with effect, and recover a judgment against the defendant, the plaintiff or his sureties "shall pay to said *defendant or defendants,* all legal costs and damages, which said *party defendant* may sustain by reason of said attachment, and which said bond shall remain in the office of said prothonotary for use of any party injured *as aforesaid.*" The sheriff not only attached but sold all the goods, without any further writ, other than an order of the court based on the sheriff's return, authorizing the sale of a small quantity of said goods as perishable. Such an order of the court was no justification even as to the perishable goods, because the sheriff had previously rendered himself liable to an action of trespass by his return of "attached," which return was conclusive on himself: Paxton *v.* Steckel, 2 Barr 93. The only material propositions in this case are two. 1. Were the goods in question the property of Margaret H. Marr? 2. If they were, the trespass was clearly a trespass against her by attaching and selling them under the writ issued against A. P. Marr.

2 OUTERBRIDGE—19

[Rothermel *v.* Marr.]

Mr. Justice Trunkey delivered the opinion of the court June 22d 1881.

This is an action of trespass against a sheriff for taking the plaintiff's goods. The defendant, plaintiff in error, pleaded not guilty to the declaration, and the issue thus made was tried and all the questions involved were considered. Respecting the special plea it is enough to say, that if good in form it was bad in substance, and had it been demurred to the plaintiff would have been entitled to judgment. It is insisted upon by the defendant that the controlling question now presented is, whether the sheriff in executing an attachment under the Act of March 17th 1869, relating to fraudulent debtors, issued against one person, may lawfully seize the goods of another. He contends that though it be true that he took the goods of Margaret H. Marr, the writ issued at the suit of Wainwright & Co. against A. P. Marr commanded and authorized such taking.

Section 1 of the Act of 1869 makes it the duty of the prothonotary to issue an attachment against any defendant, upon the application of any plaintiff who makes and files the prescribed affidavit, and also a bond " conditioned that if the plaintiff or plaintiffs shall fail to prosecute his, her or their action with effect, and recover a judgment against said defendant or defendants, he, she, or they shall pay to said defendant or defendants, all legal costs and damages which said party defendant may sustain by reason of said attachment." Section 4 provides that if the writ be personally served on the defendant, or if he reside in the county, or if he " shall appear to the action, the court shall proceed in the case in like manner as in case of summons for debt regularly issued and duly served;" and if there shall not be a personal service, residence or appearance as aforesaid, the plaintiff, after the first day of the second term, may proceed in like manner against the defendant and garnishees as is practiced in cases of foreign attachment and execution attachment.

It is obvious that the issuing of an attachment under said act is the commencement of a suit ; that when the defendant is a resident of the county, or is personally served with the process, or appears, the action is proceeded in as if commenced by summons, and the judgment is personal and final between the parties as to the subject of the action. In case of service or appearance, even the dissolving of the attachment upon the defendant's application, as provided in section 6, merely discharges the lien and releases the goods from the custody of the law; and the action is proceeded in. When there is no service or appearance, and the defendant is a non-resident of the county, the

[Rothermel *v.* Marr.]

judgment is *in rem*, as it is in foreign attachment when the defendant does not appear.

Sections 2 and 3 direct the manner of executing the attachment, and provide that when the property attached is in the hands or possession of a person other than the defendant, such person shall be summoned as garnishee. It is the duty of the officer to take the property attached into his possession where it is capable of manual seizure, and when not, the same shall be bound by the attachment in the hands of such party from whom it is due or owing, or whose duty it is to account for the same, unless the defendant or some one for him shall enter into a bond as the act prescribes. It is plain that the officer is not authorized to attach the property of any person other than the defendant. No one is to be summoned as garnishee, unless he owes the defendant or holds and is liable to account to him for goods or other property. The fact that the officer summons a person as garnishee is no excuse for taking his goods. A garnishee is not a defendant. It is neither directed nor contemplated in the statute that a garnishee's goods may be seized. The defendant urges that the bond filed before the issuing of the attachment is for security of the garnishees whose goods may be taken. But this is contrary to the letter and spirit of the statute. The bond is conditioned for payment of costs and damages to the defendant, if the plaintiff fails to recover a judgment. In the action relied on as a bar to this suit, Wainwright & Co. gave bond to A. P. Marr, with condition that if they failed to prosecute their action with effect and recover judgment against A. P. Marr, they shall and will pay to said A. P. Marr all legal costs and damages which he may sustain by reason of the attachment. That bond is no security for anybody except A. P. Marr. It is in strict accord with the statute which intends it shall be a security for the defendant in the attachment. When the plaintiff directs the seizure of goods claimed by a person other than the defendant, the sheriff may demand a bond of indemnity, and, if the plaintiff neglect to give it, may refuse to take such goods. This right of the sheriff to be secured in such cases is at common law: Shriver *v.* Harbaugh, 1 Wright 399. He may release the goods of a third person if such bond be refused. Or he may have an order upon the plaintiff and the claimant of the goods for interpleader: Act of January 30th 1871, P. L. 12. There is no rule of law which compels the real owner of attached property, on notice of the suit, to intervene and defend *pro interesse suo*, on pain of forfeiting his right of property or of action: Megee *v.* Beirne, 3 Wright 50. Unless he be called on to make good his

[Quigley *v.* De Haas.]

claim, by virtue of the statutes relating to interpleader, he may sue the officer and recover damages.

The learned judge of the Common Pleas was entirely right in ruling that the writ of attachment in the suit by Wainwright & Co. against A. P. Marr was no authority for seizure of the plaintiff's goods, and that said suit, whether pending or determined, was no bar to her recovery. It mattered not whether that action was tried, or, if tried, which party obtained judgment. Margaret H. Marr was not a party in that action. The original writ was as little authority for taking her goods as, after judgment, an execution would be.

At the trial the real question of fact in controversy was, whether the plaintiff owned the goods as against creditors of A. P. Marr. This was clearly apprehended by the court, and the instructions to the jury relating thereto need no vindication. If the sale to her by A. P. Marr was void as respects his creditors, she could not recover; but if valid, the evidence on part of the defendant conclusively showed that he was a trespasser in seizing the goods. He seized them as the property of A. P. Marr, the order of sale followed that seizure, and is no defence against this action. The evidence was ample that the plaintiff bought the goods of A. P. Marr, took and held possession, and was entitled as owner against all the world. It was rightly submitted, and, if believed, warranted the verdict in favor of the plaintiff, for the value of the property.

We have considered and endeavored to express our opinion upon the few points raised by the numerous and voluminous assignments of error. The instructions and rulings were quite as favorable to the defendant as he had a right to demand.

Judgment affirmed.