## Commonwealth v. Burns.

*Practice, Superior Court—Appeals—Defective paper-books.*

Where the action of the court below, which is assigned for error, consists in the refusal to take off nonsuit, it is important that plaintiff should print his statement that it may be determined whether the evidence which he produced at the trial was sufficient to support the cause of action of which he complained.

*Sheriff's liability—Collateral impeachment of judgment.*

In an action on a sheriff's bond to enforce liability for failure to make the money on a writ of fieri facias, the court will not inquire collaterally into a judgment directing the sheriff to withdraw from an attachment under the act of 1869. The plaintiff rested his case on the record which disclosed an order dismissing the attachment and refusing an issue of interpleader and directing the sheriff to withdraw from the custody of said goods and chattels. *Held,* that no mere irregularity in the record can be inquired into in a collateral proceeding and that the record must show that the judgment was void on its face or it must be accepted as conclusive upon the parties.

*Dissolution of attachment—Discretion of court—Review in collateral proceedings.*

A court may dissolve an attachment on extrinsic evidence which cannot be put in the record in the exercise of its power to grant summary relief from an abuse of the process of the court and in the exercise of this power the court is vested with a discretion, which, in all collateral proceedings, it must be presumed to have exercised rightly and according to law.

Argued May 7, 1900. Appeal, No. 156, April T., 1900, by Platt-Barber Company, in suit of Commonwealth to use of Platt-Barber Company against Edward C. Burns et al., from judgment of C. P. Jefferson Co., Sept. T., 1898, No. 313, on judgment of nonsuit. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. D. PORTER, J. W. W. PORTER, J., dissent.

Assumpsit.   Before REED, P. J.

It appears from the record that this was an action on an official bond of the sheriff.

Other material facts appear in the opinion of the court.

The court below entered a nonsuit which it subsequently on motion refused to take off, entering the following order:

[It appears from the record of the attachment proceedings offered in evidence, that the question of the ownership of the property there involved came before this court on a rule obtained by the sheriff, on the respective parties, to appear and show cause why an issue should not be framed to determine the same. Upon the return of that rule and a hearing had thereon, the court determined that the title of the claimant to the property was well founded, thereupon making the rule absolute and ordering and directing the sheriff to withdraw from the custody of the same.

It may be that the court reached an erroneous conclusion and entered an erroneous decree, but, if there was an error in that, we prefer to continue in the error of our way, rather than to have the decree of the court reviewed collaterally in this proceeding.   The sheriff having made a return of nulla bona to the writ of fi. fa. here, and there being no evidence that the defendant had any property other than referred to in the attachment, which by the decree of the court was adjudged to belong to another, to wit: the claimant, we think there is no evidence to go before this jury, and the nonsuit is granted.

To which order and ruling of the court plaintiff's counsel except, and bill of exception is sealed at their request December 1, 1899.] [1]

Plaintiffs appealed.

*Errors assigned* were (1) in entering compulsory nonsuit, reciting words of the order.   (2) In refusing plaintiffs' motion to take off compulsory nonsuit in the following words: "1. That under all the evidence in the case, the court erred in directing a compulsory nonsuit.   2. The court erred in holding that the court had jurisdiction in ordering the sheriff to withdraw from the goods and chattels attached by him under attachment issued at the suit of Platt-Barber Company v. Charles McQuonn, being No. 54, February term, 1898.   3. The

court erred in holding that the sheriff was protected by the order of court directing the withdrawal of his lien upon the goods by virtue of said attachment, as no power is conferred upon the courts to make such an order by the act of assembly approved May 26, 1897. 4. The court erred in holding that it had power to divest the plaintiff in said attachment of their statutory lien upon said goods by virtue of said order to the sheriff, as no such power is conferred upon the courts by said act of assembly. February 2, 1900, the plaintiff sought to maintain this action by showing that the sheriff had neglected to seize and sell, upon the writ of fieri facias placed in his hands, the goods and chattels previously taken on the attachment, by which the action was commenced, wherein the judgment on which said writ was issued was obtained. On a rule to interplead, it had been judicially ascertained that these goods and chattels did not belong to the defendant in that action, and thereupon the sheriff was directed to release said goods and chattels and to withdraw from the custody of the same. In the present action the plaintiff treats that order as a nullity on the ground that the court had no power to make it. We think otherwise and accordingly discharge this rule and refuse the motion to take off the nonsuit heretofore granted."

*W. C. Pentz,* with him *J. C. Horton,* for appellants.—The conditions in this case arise under the act of assembly of May 26, 1897, P. L. 95.

The object of this act is to protect the sheriff when he levies on goods and chattels of a defendant, which are claimed by another person and is clearly expressed in the 1st section.

Whether a debtor assigned his property with intent to defraud his creditors is for the jury: Barr v. Boyles, 96 Pa. 31.

In this case the court having discharged the rule, therefore, the issue to determine the ownership of the property was refused, and all that the sheriff could do was to follow up his levy and to make the money on the attachment in order to be relieved from any liability as provided in section 15 of the act of May 26, 1897.

One of the rights guaranteed by the constitution is that of a trial by jury, but if the rule laid down in this case prevails then that right is swept away. This rule then becomes a usurpation of authority.

The court was of the opinion that this order could not be attacked collaterally. It is a well established principle of law that want of jurisdiction can be attacked at any time in any form.

A party cannot be estopped or precluded from making objection at any time or in any court if it is an objection that lies at the foundation of any case: Coleman's Appeal, 75 Pa. 441.

And since want of jurisdiction renders all proceedings void, the jurisdiction may inquire into it collaterally: 12 Am. & Eng. Ency. of Law 308, n. 1; Wall v. Wall, 23 W. N. C. 237.

The doctrine that when the court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct, as a general proposition, but like all general propositions is subject to many qualifications in its application.

The doctrine is only correct when the court proceeds after acquiring jurisdiction of the cause, according to the established modes governing the class to which the case belongs, and does not transcend in the extent or character of its judgment the law which is applicable to it: Windsor v. McVeigh, 93 U. S. 274.

The authorities cited clearly sustain our contention that Edward C. Burns, the sheriff, had no right to withdraw from his levy on the goods, but was compelled to follow out the act of assembly. Therefore, the court erred, first, in entering a compulsory nonsuit, and second, in refusing to take it off, and should be reversed.

*Edward A. Carmalt*, with him *Nathan L. Strong*, for appellees.—It is not and never was the law that the sheriff could go ahead, disobey and annul the decrees of the court of common pleas. To permit or allow such a thing would be destructive of all confidence in our judicial system.

In considering the first and second assignments of error, they may as well be considered together as they amount to one and the same thing, and may be included in the following proposition:

The appellants contend that the proceedings, decree and order of the court made January 22, 1898, was coram non ju-

dice and absolutely void. The appellees maintain that they were regular and valid, and if there be any error or defect, the court having had jurisdiction, its proceedings cannot be collaterally assailed upon the trial of the cause appealed from in the court below. By the appeal taken in this case, the record, opinion of the court, order and decree made January 22, 1898, to No. 54, December term, 1897, is not before the court for review. The court acquired 'jurisdiction of the person and the subject-matter and now every presumption is in favor of the regularity of said proceedings and all orders and decrees made therein.

We contend that where the court has jurisdiction of the subject-matter and the parties in interest, it has the right to decide every question which occurs, and whether its decision is right or wrong its judgment and decrees are to be regarded as binding until modified, reversed or set aside. Especially is this true when viewed in light of the words and intention expressed in section 15 of the act of assembly of May 26, 1897.

Where jurisdiction has attached, everything done within the power of that jurisdiction when collaterally questioned, is to be held conclusive of the rights of the parties unless impeached for fraud : Cornett v. Williams, 87 U. S. 226.

As a general rule courts have control of executions issued from their own records, and for sufficient reasons can restrict a levy or set it aside : Cake v. Cake, 192 Pa. 550.

If they were injured and did not desire to be bound by the court's decree, they had the same standing as the claimant would have had, if placed in like circumstances by a decree of the court against his rights, to review any wrongful impression of the court that the act of 1897 enlarges the court's duties in regard to granting and refusing an issue, and they could have corrected any technical abuse of judicial discretion the court may have made by examining into the merits of the case at this hearing : Book v. Sharpe 189, Pa. 44.

OPINION BY W. D. PORTER, J., July 26, 1900 :

The docket entries printed in appellant's paper book indicate that this is an action upon the official bond of Edward C. Burns, sheriff of Jefferson county. The plaintiff's have failed to print their statement, which may have assigned breaches of

official duty upon the part of the sheriff, but we are left to assume that fact.    When the action of the court below which is assigned for error consists in the refusal to take off a nonsuit, it is important that the plaintiff should print his statement, in order that it may be determined whether the evidence which he produced at the trial was sufficient to support the cause of action of which he complained.    We gather from the arguments of counsel and the evidence as printed, that the breach of official duty which was made the subject of complaint in plaintiffs' statement must have been alleged to be in the failure of the sheriff to make the money on a certain writ of fieri facias, to him directed, which issued upon a certain judgment in favor of the plaintiffs, against one Charles McQuown, and making a false return of "nulla bona as to personal property" upon said writ, when, in fact, there was sufficient property of the defendants, subject to said execution, to satisfy said claim then, in contemplation of law, in the hands of the sheriff, and, by law, required to be applied to the satisfaction of that writ.

To sustain this action against the sheriff, the plaintiffs offered the record at No. 54, February Term, 1898, of the court of common pleas of Jefferson county, and the fi. fa. issued upon the judgment in that case.    They proved the official character of the sheriff, and offered in evidence a bond, dated December 30, 1897, executed by the Platt-Barber Company, in favor of the sheriff, in the sum of $1,500, with sureties.    This bond is not printed in connection with the evidence and we are left in the dark as to its condition.    It thus appears that the only evidence produced by the plaintiffs which tended to establish that the sheriff made a false return to the execution to him directed, and that by due diligence he ought to have succeeded in making the money upon that execution, is to be found in the record at No. 54, February term, 1898, of the court of common pleas of Jefferson county.    That record, as printed, discloses the proceedings below recited.    The Platt-Barber Company commenced an action against Charles McQuown, by an attachment under the Fraudulent Debtor's Act of the 17th of March 17, 1869, P. L. 8, and the supplements thereto.    To this writ the sheriff made return that on December 29, 1897, he had attached certain goods and chattels, rights and credits, of the defendant, in the hands and possession of Miller Stoops,

and summoned him as garnishee. And that he had, on December 31, 1897, served the said attachment on Charles Mc-Quown, the defendant. On January 1, 1898, the sheriff presented his petition, in due form, to the court, setting forth that he had attached the goods in question ; that he found the said goods and chattels in the hands and possession of Miller Stoops, and summoned him as garnishee ; that said Miller Stoops claimed to have the legal title thereto, and that the sheriff had been duly served with notice of said claim, that there was an actual and real controversy over the ownership of said property, and that the sheriff was unable to tell to whom said goods rightfully belonged. " That your petitioner desires to comply with the provisions of the `act of assembly in such case made and provided, that he may be freed from all liability to the claimant, plaintiff, defendant, or person or persons in whose possession the goods and chattels were found, and all and every other person or persons whomsoever." The petition prayed that the rule to show cause might be entered, issued and served on the plaintiff, defendant, claimant and any other party or parties in interest, to appear and show cause why an issue should not be joined between the plaintiff and said parties in interest to determine the ownership of said goods and chattels. The court granted the rule to show cause, the same was duly served on all the parties, answers were filed to said rule by the plaintiff and Miller Stoops, the claimant. On January 14, 1898, the sheriff caused the goods to be appraised, as provided in section 6 of the Act of May 26, 1897, P. L. 95. The value of said goods, as ascertained by the appraisement, was $885.50. On January 22, 1898, the court, after a hearing of the parties upon the rule to show cause why an issue should not be framed to determine the ownership of the goods and chattels seized by the sheriff, made the following order : " The rule is discharged, and the sheriff is hereby ordered to withdraw from the custody of said goods and chattels :" On February 15, 1898, the plaintiffs took judgment against the defendant in the attachment proceedings for want of an appearance and affidavit of defense, the judgment being liquidated in the sum of $612.05.

The plaintiffs now contend that the court was without jurisdiction to make the order January 22, 1898, discharging

the rule for an interpleader, and ordering the sheriff to withdraw from the custody of the goods, and that, therefore, that judgment of the court can be collaterally attacked in this proceeding. The only question, therefore, is as to the jurisdiction of the court to make the order in question. That the court had jurisdiction of the parties and the subject-matter must be accepted as settled, the statutes so ordained, and the right of the plaintiffs to recover here, if they have any such right, is dependent upon the jurisdiction of the court in the original proceedings. The only question to be considered is the power of the court to make the order in question, with regard to the distribution of the property which had come under its jurisdiction. No mere irregularity in the record can be inquired into in this collateral proceeding ; it is not sufficient that the judgment might have been voidable in error ; the record must show that it was void upon its face, or it must be accepted as conclusive upon the parties : Warder v. Tainter, 4 Watts, 270 ; Knox v. Flack, 22 Pa. 337 ; Stevenson v. Virtue, 13 Pa. Superior Ct. 103 ; Yaple v. Titus, 41 Pa. 195. Where the judgment is merely irregular and voidable, the attack must be made in the same form and in the same proceeding. The garnishee in this attachment proceeding had appeared at the hearing, and, by force of the Act of April 29, 1891, P. L. 35, had become a party to the cause, and he was, therefore, entitled to move the court to dissolve the attachment in so far as the property in his hands and to which he claimed title was involved. The order which is the subject of inquiry was, in effect, a dissolution of the attachment in so far as it affected the property in question. That the court may so dissolve an attachment on extrinsic evidence which cannot be put in the record is well settled, and the presumption is that everything was done rightly and according to law : Nicoll v. McCaffrey, 1 Pa. Superior Ct. 187. It is the exercise of a power to grant summary relief from an abuse of the process of the court, and in the exercise thereof the court is vested with a discretion which, in all collateral proceedings, it must be presumed to have exercised rightly and according to law : Little v. Lehigh Valley Railroad, 9 Pa. Superior Ct. 411 ; Holland v. White, 120 Pa. 228 ; Hoppes v. Houtz, 133 Pa. 34. The court was vested with jurisdiction to dissolve the attachment in ques-

tion, upon the ground that the writ had been irregularly issued, or that it had not been served in the manner required by law, or that property had been seized thereunder which was not liable to seizure under the writ. When exercising that jurisdiction, it might become the duty of the court to pass upon questions of law arising out of undisputed facts, and the conclusion reached must be accepted as conclusive in all collateral proceedings.

When the plaintiffs directed the seizure of goods claimed by a person other than the defendant, the remedy of the sheriff, prior to the Act of May 26, 1897, P. L. 95, was to demand a bond of indemnity, and if the plaintiffs failed to furnish the same, refuse to take the goods, or he might apply for an order upon the plaintiffs and the claimant to interplead, in accordance with the provisions of the Act of January 30, 1871, P. L. 12. There was no rule of law which compelled the owner of property attached, on notice of the suit, to intervene, on pain of forfeiting his right of property, and he might maintain an action against the sheriff for the wrongful seizure of his goods: Megee v. Beirne, 39 Pa. 50. It was decided in Rothermel v. Marr, 98 Pa. 285, that an attachment under the provisions of the act of March 17, 1869, did not authorize the sheriff to attach the goods of any person other than the defendant; that he might not seize the goods of a garnishee named therein, and that if he did so he would be liable in trespass, no matter what the event of the suit between the plaintiff and the original defendant. An owner of property is not, however, required to permit his property to remain in custody and finally to be sold and then resort to his action against the sheriff. If, upon the undisputed facts on the hearing of the rule to show cause why an interpleader should not be had, it appears that the plaintiff in the attachment would not be entitled to go to the jury upon the question of the ownership of the goods by the defendant, it is not error for the court to refuse an issue and dissolve the attachment as to the goods in question.

The act of 1897 did not enlarge the duties of the courts in regard to the granting or refusing of an issue. The purpose of the act was to protect the sheriff against the conflicting claims of the plaintiff in the execution, or attachment, and the

claimant of the goods. Prior to the passage of that act the sheriff, in case an issue was refused upon the rule to interplead, was liable to a suit by plaintiff in an execution if he refused to levy and sell the goods and it subsequently turned out that the goods were subject to the execution. On the other hand, he was exposed to a suit by the owner if he did levy on goods not so subject. The act was intended to protect him in this dilemma, and provided a proceeding under which he could compel the contending parties to fight out their conflicting claims among themselves, directly. In general, the granting or refusing of an issue is a matter of discretion in the court, which is not even reversible in error, unless an abuse of discretion is made to appear. "The court is not to inquire into the merits of the respective claims further than to see that they are not merely colorable, or fraudulent, or collusive, but may be the basis of bona fide suits : " Book v. Sharpe, 189 Pa. 44. The 1st section of the act of 1897 manifestly contemplated that the assertion of the attaching creditor that the property was that of the defendant, and the allegation of the claimant that he owned the goods, should be the subject of a preliminary inquiry by the court; the fact that notice to all parties was required manifestly contemplated that a hearing should be had, and that the right of any one of the respective parties to an issue was to be passed upon by the court. If the facts are undisputed and the inferences to be deduced therefrom clear and unconflicting, the question of title becomes one of law and is to be passed upon by the court. If the facts are disputed, the parties are entitled to an issue. If the claimant fails to produce evidence sufficient to warrant the submission of the question of his ownership of the goods to a jury, the issue should be refused and the sheriff directed to proceed upon his writ. If the plaintiff fails to produce any evidence which would be sufficient to warrant the submission to the jury of the question of the ownership of the goods by the defendant, or that they were fraudulently sold or disposed of, then the court is not required to submit to an abuse of its process, nor to impose upon the claimant the burden of a useless litigation, and may refuse an issue and order the sheriff to surrender the custody of the goods. The statute does not take away the discretionary power of the court, and the order

complained of did not exceed the powers with which the court was vested: Tygard's Appeal, 7 Pa. Superior Ct. 388. The record upon which the appellants relied was fatal to their right to recover in this action.

Judgment affirmed.

WILLIAM W. PORTER, J., dissents.