Hamberger *v.* Marcus.  Corr's Appeal.

| 157 | 133 |
|---|---|
| 30 SC | 1 24 |

*Attachment—Wages—Commissions—Act of April 15, 1845.*

Under the act of April 15, 1845, P. L. 460, an attachment does not lie against commissions due from an employer to his employee, as such commissions are equivalent to wages or salary.

*Brokers—Factors—Commissions—Salesmen—Attachment.*

A traveling salesman who exhibits samples of and takes orders from purchasers for his employer's goods is not, in a technical or popular sense, a broker, or factor, although he may be compensated for his services by commissions on the sales so effected by him.

It seems that a factor's or broker's commissions are not exempt from attachment by virtue of the provisions of the act of April 15, 1845.

*Attachment—Interrogatories—Practice, C. P.*

If the answers to interrogatories are broad enough to include commission merchants and brokers as well as salesmen, more specific answers should be required, or the court may direct an issue for the ascertainment of the particular facts.

Argued April 3, 1893.  Appeal, No. 311, Jan. T., 1893, by garnishee, Bernard Corr, from judgment of C. P. No. 3, Phila. Co., March T., 1892, No. 15, on verdict for plaintiff, Philip Hamberger, in case of Philip Hamberger *v.* Julius Marcus. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Rule for judgment against garnishee on answers in foreign attachment.

The material answers to the interrogatories were as follows:

" I have had no transactions with defendant, Marcus, saving that I have employed him from time to time to sell for me liquors.  These liquors he has sold, and, as his compensation for his services in making such sales from time to time, become entitled to certain moneys.

" The amount of his sales appears in the following statement. This statement shows the quantity of liquor sold by him for me, the dates of such sales and the amount of commissions earned: [Items from Dec. 18, 1891, to July 19, 1892.]

" I refuse to state to whom said sales were made, as this would disclose not only the names of my customers, but the prices at which I sell, to a rival in business.  I am advised by counsel, and therefore aver, that I cannot in this proceeding be required to give such information.

" I have from time to time paid to said Marcus the whole of the commissions earned by him for his services in selling for me, saving the sum of $125.  This amount still remains in my hands, I having refused to pay him his compensation for the liquor sold on the 18th December, 1891, until the present attachment was disposed of.

" I have had no other dealing of any sort or kind with said Marcus.

" I have been notified by said Marcus that the moneys due to him for his personal services in making said sales are not attachable, and that if they are, he claims the benefit of the exemption act, allowing him $300.

" All the above commissions were earned by said Marcus as his compensation for his own personal services in making sales for me of my goods."

Rule for judgment absolute.  Garnishee appealed.

*Error assigned* was entry of judgment.

*John G. Johnson*, for appellant.—Defendant was in garnishee's employ: Act of April 15, 1845, P. L. 460 ; Smith v. Brooke, 49 Pa. 147 ; Costello v. Coal Co., 33 Pa. 241 ; Wentroth's Ap., 3 W. N. 248.

The amount of commissions earned was " salary," within the meaning of the act of April 15, 1845 : Heebner v. Chave, 5 Pa. 115 ; Seider's Ap., 46 Pa. 57 ; Hutchinson v. Gormley, 48 Pa. 270 ; Com. v. Butler, 99 Pa. 535 ; Sweeny v. Hunter, 145 Pa. 363.    They were within the words and spirit of the act of 1845, and were not attachable : Adam's Ap., 47 Pa. 94.

The act of 1845 extends to foreign attachments : Firmstone v. Mack, 49 Pa. 387 ; Catlin v. Ensign, 29 Pa. 264 ; Sweeny v. Hunter, 145 Pa. 363 ; Matson v. Bryan, 26 W. N. 248.

*Samuel M. Hyneman*, for appellee.—The commissions were neither wages nor salary : Com. v. Butler, 99 Pa. 535.

The nature and character of defendant's employment by appellant were not such as were contemplated by the act of April 15, 1845.

The authorities cited by appellant are not applicable to the facts in this case, as defendant cannot possibly be regarded as a laborer.

Smith v. Brooke, 49 Pa. 147, was a case of a master carpenter engaged in building a house for the owner, who employed laborers under him as his helpers.    He actually performed manual labor, and, as far as his compensation was involved, it was free from attachment.

In Costello v. Coal Co., 33 Pa. 241, the miner who contracted to mine coal with the assistance of a helper for so much a ton, actually did part of the mining and performed actual manual labor.

Wentroth's Ap., 3 W. N. 248, raised the question of a lien for wages under the act of 1872.    The moneys due to Snyder, who had contracted to deliver to Wolf all the timber cut down upon a certain tract for a certain price per thousand feet, were held not to be a lein, it having been shown by the evidence that he did no manual work himself.

Seider's Ap., 46 Pa. 57, was a case which arose upon the construction of the act of April 2, 1849, relative to preference given to laborer's wages. The only question in this case was whether the wages of colaborers were to be preferred claims.

The decision in Hutchinson v. Gormley, 48 Pa. 270, which held that the fees of a gauger of oil for Allegheny county were not subject to attachment, was based not upon the construction of the words wages or salary, but was decided upon an entirely different principle, to wit, that a public officer shall not be obstructed in the performance of public duties by individual creditors : Heebner v. Chave, 5 Pa. 115 ; Penna. Coal Co. v. Costello, 33 Pa. 241 ; Smith v. Brooke, 49 Pa. 147 ; Wentroth's Ap., 3 W. N. 48 ; Schwaake v. Langton, 6 W. N. 124.

OPINION BY MR. JUSTICE McCOLLUM, October 2, 1893 :

This is an appeal from a judgment entered against a garnishee in a suit commenced by a writ of foreign attachment. The judgment was entered on the answers of the garnishee to the interrogatories filed. It is contended by the garnishee that the debt due from him to the defendant is not liable to attachment. It appears from his answers that he employed the defendant from time to time to sell liquors and allowed him for his services commissions on the sales ; that when the attachment was served he was entitled to commissions amounting to the sum of $125, and during the next seven months he earned and was paid commissions amounting to the sum of $399.78. The judgment includes the commissions earned and paid after, as well as the commissions earned and unpaid when, the attachment was served. The answers therefore present, prima facie, a case in which a creditor is seeking to appropriate in satisfaction of his claim the commissions due from an employer to his employee. These commissions constitute the compensation of the employee for personal services performed for his employer under an agreement between them. Are they liable to attachment? It is provided in section 5 of the act of April 15, 1845, P. L. 460, " that the wages of any laborer or the salary of any person in public or private employment shall not be liable to attachment in the hands of the employer." It was the obvious purpose of this act to enable laborers and persons in public or

private employment to receive from their employers compensation for their personal services without hindrance from their creditors. The miner who is paid by the ton, the mechanic who is paid by the piece, and the clerk or salesman who is paid by commissions on his sales, are as much within its protection as if they were paid by the day, week, month or year. A wholesale merchant employs two persons to travel over the country and obtain from the retail dealers orders for his goods ; to one of them he pays a certain sum per month and to the other he pays commissions on the amount of orders taken. These commissions are as clearly compensation of the employee for personal services in the interest and for the benefit of the employer as the monthly stipend is. It is a narrow construction of the statute which allows the creditors of one employee to attach in the hands of the employer the commissions which constitute his compensation for personal services and exempts from attachment in the hands of the same employer the compensation of another employee for like services. A construction which admits of such results is not warranted by a mere difference in the method of compensation. In Wentroth's Appeal, 3 W. N. 248, the question was whether the claimant was a laborer within the meaning of the act of April 9, 1872, P. L. 47, and this court said : " If he was a laborer it must be conceded that it does not matter in what manner his services were to be compensated—whether by daily wages or by the quantity of lumber delivered." In Seider's Appeal, 46 Pa. 57, it was decided " that, under the act of April 2, 1849, Purd. 835, all laborers employed by the persons or companies referred to in the act are entitled to its benefits whether the wages agreed to be paid them are measured by time or by the ton, or by the piece or any other standard."

It is what the employer owes his employee, for personal services rendered in that relation which is exempt from attachment in the hands of the employer, and it matters not whether it is called wages or salary. In Commonwealth ex rel. Wolfe v. Butler, 99 Pa. 535, Chief Justice SHARSWOOD, speaking for this court, said : " The truth is, and this the lexicographers seem to hold, that if there is any difference in the popular sense between ' salary ' and ' wages ' it is only in the application of them to more or less honorable services. A farmer pays his

farm hands, in common speech, ' wages,' whether by the day, the week, the harvest or the year.   If for any reason he has occasion to employ an overseer his compensation, no matter how measured, is called a 'salary.'   An iron master pays his workmen wages, his manager receives a salary.   A merchant pays wages to his servant who sweeps the floor, makes the fire and runs his errands, but he compensates his saleman or clerk by a salary.   How can it make any difference in what way the compensation is ascertained?"   In Hutchinson v. Gormley, 48 Pa. 270, it was held that an attachment would not lie for the fees due a gauger of oils because it would interfere with his compensation and obstruct him in the execution of his duties. In delivering the opinion of the court, Mr. Justice REED, after stating the grounds of the decision, said : " This makes it unnecessary to consider whether his compensation is covered by the word 'salary' in the proviso to the 5th section of the act of April 15, 1845, although it is clearly within the spirit."   It is true that the cases referred to do not decide the precise question raised by the answers to the interrogatories, but they shed light upon it, and are corroborative of the view that the attached commissions constitute the compensation of an employee for personal services rendered to his employer, and are within the protection of the act of April 15, 1845.

We cannot assent to the claim of the appellee that it is a necessary inference from the answers that the commissions were earned by a commission merchant, or "broker."   The term " broker " in its largest sense is applied to a specialist who acts as the medium of negotiating and contracting any kind of bargain.   Thus there are ship brokers, insurance brokers, real estate brokers, etc.   The term is however emphatically applied to persons whose business it is to negotiate and effect contracts of sales between merchants : Am. & Eng. Ency. of Law, vol. 2, page 572.   In most countries a person who holds himself out to the public and engages in business as a broker must take out a license to enable him to act as such :   Wharton on Agency, 458, sec. 695.   In Pennsylvania, by the act of May 15, 1850, P. L. 773, all stock, bill, exchange, merchandise and real estate brokers were required to pay for their respective licenses " three per cent upon the annual receipts and commissions, discounts, abatements, allowances or other similar means in the transaction of their business."

A commission merchant or factor is an agent for the sale of goods in his possession or consigned to him: Am. & Eng. Ency. of Law, vol. 3, p. 317. " He must be a specialist, that is to say, he must be a proficient in this particular business, pursuing it as a trade: " Wharton on Agency, p. 448, sec. 735. He has possession of the goods he is authorized to sell and is entitled to a lien upon them for his charges and disbursements. He receives and sells goods for others as an occupation. Being a specialist he cannot without his principal's consent, delegate his authority to another, but he may, and ordinarily must, employ assistants in the merely manual and clerical service pertaining to his business.

A traveling salesman who exhibits samples of and takes orders from purchasers for his employer's goods is not, in a technical or popular sense, a broker, or factor, although he may be compensated for his services by commissions on the sales so effected by him. A salesman in the store of his employer may be paid for his services in like manner without becoming a commission merchant or taxable as a broker. In these cases the commissions are paid for personal services, and as we have already seen are fairly within the scope of the act which exempts from attachment in the hands of the employer the wages of laborers and the salaries of persons in public or private employment.

But it is claimed that the answers to the interrogatories are broad enough to include commission merchants and brokers as well as salesmen. If it be conceded that they are, and that a broker's or a factor's commissions are liable to attachment, in the hands of the persons for whom he transacts business, it does not necessarily follow that the judgment against the garnishee should be sustained. In such case the proper course is to require more specific answers or to direct an issue for the ascertainment of the particular facts. In this way the debtor, the creditor and the garnishee may be protected in the enjoyment of their respective rights in relation to the matter under investigation.

We do not think that a factor's or broker's commissions are exempt from attachment by virtue of the provisions of the act of April 15, 1845. These commissions do not constitute, within the meaning of that act, the wages of laborers or the salary of

a person in public or private employment.  A factor holds himself out to the public as engaged in the business of making sales on commission, and as qualified to carry it on.  His rights, powers and duties as such are largely defined by usage and differ materially from those of a mere clerk or salesman.  He has a distinct business and, although it involves services for others, he may employ clerks and laborers to aid him in transacting it.  It is a business which may be, and often is, carried on by partnerships formed for the purpose.  While the proceeds of this business are usually in the form of commissions on the sales made in it, they are not wages or salary in the sense in which these words are used in the statute.  For similar reasons a broker's commissions are not within its protection.

Judgment reversed and procedendo awarded.