## Peoples Bank of Western Pennsylvania
## v. Quicquaro

*Allen L. Palmer,*for plaintiff.

*Anthony J. Kociuszko,* for defendent Thomas R. Bush.

PRATT, *J.*, July 5, 1988 — Defendant, Thomas R. Bush, owned 50 percent of the stock of South Side Services Inc. which sold industrial gases and welding supplies. South Side was eventually succeeded in business by Penn-Ohio Industrial Gases Inc., the garnishee.

As part-owner of South Side, Bush entered into an agreement on July 16, 1987, whereby he sold his share of the ownership of South Side for $20,000 cash payable at the signing of the agreement. The agreement also provided, in part, that in return for a one-year, limited, restrictive covenant not to compete, Bush would receive $20,800 payable at the monthly rate of $1,111 for 18 consecutive months, effective July 1987. The $20,800 was equivalent to one year's salary which Bush received as part owner of the business. Since Bush was prohibited by the covenant not to engage in any industrial gas or welding supply business in certain portions of western Pennsylvania and eastern Ohio for one year, he

remained otherwise unemployed from the date of the agreement until May 1988, at which time he obtained employment with Cobra Manufacturing as a sales person. Further, from the date of the agreement, Bush did not perform any services for South Side or Penn-Ohio. However, South Side and Penn-Ohio benefited from Bush not competing in the busness.

While Bush was part owner of South Side, he cosigned a note on behalf of one Mel Blount for a loan from plaintiff, Peoples Bank of Western Pennsylvania. Upon default of the loan by Blount, Peoples, in seeking payment from Bush as a guarantor, attached the money payable to Bush by installments under the agreement which was in the possession of Penn-Ohio, as successor to South Side. Bush then filed a petition for stay and to set aside execution which is presently before this court.

The issue before the court is whether the amount of $20,800 presently being paid to Bush in monthly installments is subject to attachment by Peoples.

Bush advances a notion that the money presently being paid to him by Penn-Ohio is not subject to attachment, because he has been an employee of Penn-Ohio at all times and the $20,800 is compensation for his personal efforts and talent. Bush contends that the funds are exempt from attachment under 42 Pa.C.S. §8127 and requests that the court stay the execution and set aside the writ of execution pursuant to Pa.R.C.P. 3121 (a) (4) and 3121 (d) (2), 42 Pa.C.S.

Peoples, on the other hand, points out the funds in question represented consideration for the sale of an intangible asset by Bush rather than his wages, salaries or commissions and, thereby, are not within the protection of 42 Pa.C.S. §8127. Peoples also argues that Bush was not an employee of Penn-Ohio

when the funds were attached. We agree and, for the reasons that follow, believe that the petition should be denied.

Section 8127 of the Judicial Coode, 42 Pa.C.S. §8127, provides,

"The wages, salaries and commissions of individuals shall while in the hands of the employer be exempt from any attachment, execution or other process except upon an action or proceeding:

"(1) For support.

"(2) For board for four weeks or less.

"(3) Under the Act of August 7, 1963, P.L. 549, referred to as the Pennsylvania Higher Education Assistance Agency Act." 42 Pa. C.S. §8127. This statutory exemption from attachment for personal earnings is derived from 42 P.S. §886, enacted as the act of April 15, 1845, P.L. 459, which provided, in part,

"[t]hat the wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer." *Bell v. Robert,* 150 Pa. Super. 469, 471, 28 A.2d 715, 716 (1942).

Pa.R.C.P. 3121 provides, in part:

"(a) Execution shall be stayed as to all or any part of the property of the defendant

. . .

"(4) upon a showing of exemption or immunity of property from execution;

. . .

'(d) The court may on application of any part in interest set aside the writ, service or levy

. . .

·(2) upon a showing of exemption or immunity of property from execution . . ." Pa.R.C.P. 3121(a)(4) and 3121(d)(2), 42 Pa.C.S.

It is evident that, before this court can grant Bush the relief he seeks, he must first establish that (1) the money attached by Peoples in the possession of Penn-Ohio, the garnishee, falls within the category designated by the legislature as being exempt and (2) the garnishee, Penn-Ohio, was Bush's employer at the time the money was attached. The determinative factors as to whether funds held by a garnishee are wages, salaries, or commissions, is whether the money is payable for mental or manual labor. *McCloskey v. Northdale Woolen Mills et al.,* 296 Pa. 265, 269, 145 Atl. 846, 847 (1929); *Bell, supra* at 475, 28 A.2d at 717. If the compensation is for personal services rendered and not as a result of direct profit from another persons labors, then it is statutorily exempt from attachment. *Bell, supra* at 475, 28 A.2d at 718; *McCloskey, supra* at 270, 145 Atl. at 848; *Sheryl Records Inc. v. The Cyrkle,* 431 Pa. 299, 304-5, 245 A.2d 454, 456 (1968).

In the instant case, consideration for Bush's agreement not to compete did not result from Bush expending any mental or manual labor on his part. Bush did not perform any personal service in return for the covenant not to compete. He admitted during his testimony that he did not perform any services for South Side or Penn-Ohio. While the covenant not to compete may have benefited the garnishee, we do not view the compensation paid as resulting from personal services or mental or manual labor. Resultantly, we find that the funds held by Penn-Ohio, the garnishee, and attached by Peoples do not come within the protection of 42 Pa.C.S. §8127.

The second stage of our analysis requires that we determine whether Penn-Ohio is Bush's employer. Black's Law Dictionary defines "employer" as, "One who employs the services of others; one for whom

employees work and who pays their wages and salaries." Black's Law Dictionary 273 (Abridged 5th ed. 1983).

"Employ" is defined as, "To engage in one's service; to hire; to use as an agent or substitute in transacting business; to commission and intrust with the performance of certain acts or functions or with the management of one's affairs." *Id.*

Furthermore, although the Pennsylvania Unemployment Compensation Law, 43 P.S. §751 to §914, is not substantially germane to the instant cause of action, it is helpful in interpreting the term employer. It defines "employee" as, "Every individual, whether male, female, citizen, alien or minor, who is performing or . . . has performed services for an employer in an employment subject to this act." 43 P.S. §753(i).

The term "employer" is defined under the Unemployment Compensation Law as, "every individual, copartnership, association, corporation . . . who or which employed or employs any employee in employment subject to this act for some portion of a day during a calendar year . . ." 43 P.S. §753(j)(1).

Finally, we note the definition of "employment," "all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral, including service in interstate commerce, and service as an officer of a corporation." 43 P.S. §753(1)(1).

Bush was not hired by or working for Penn-Ohio nor was he required to perform any personal service for Penn-Ohio or act as an agent to transact any business for it under the agreement. Rather, Bush was required to refrain from conducting any industrial gas and welding supply business for one year in a certain geographical area. There is nothing in record which would support a finding that Penn-Ohio

employed Bush or that Bush was in any fashion an employee of Penn-Ohio.

As a final argument Bush asserts that, notwithstanding the exemption from attachment provided by 42 Pa.C.S. §8127, this court has the authority to grant his petition upon any legal or equitable grounds under Pa.R.C.P. 3121(b)(2) and (d)(3). Bush is correct in that the court may stay execution or set aside any writ of execution upon a showing of "any other legal or equitable ground therefor." Pa.R.C.P. 3121(b)(2) and 3121(d)(3), 42 Pa.C.S. However, the only "legal or equitable" basis alleged by Bush in support of his contention is found in paragraph nine of his petition, whereby he alleges that Peoples also possesses a mortgage on property which he owns and, without the money from Penn-Ohio, he is unable to meet his payments.

"The term 'equitable ground' has been construed in the broad sense of meaning fairness and financial feasibility." (citation omitted). *Shamokin-Coal Twp. Joint Sewer Authority v. Sandri,* 51 Northumb. L.J. 200, 202 (1979). In reviewing the record as well as the briefs in this case, there is no evidence before this court which would amount to a lack of fairness or financial feasibility on the part of Bush. He is now regularly employed in sales and, thus, can make payments on the mortgage held by Peoples. Consequently, this court cannot find any other legal or equitable basis upon which to stay the execution or set aside the writ. Therefore, this argument also fails.

We conclude that Bush has not met his burden of proving that the compensation or consideration which he received pursuant to the agreement represents wages, salaries or commissions in the possession of his employer and, thus, cannot claim the statutory exemption under 42 Pa.C.S. §8127, nor is

Bush entitled to equitable or other legal relief under the Pennsylvania Rules of Civil Procedure.

Hence, the following

## ORDER OF COURT

Now, July 7, 1988, the petition for stay and to set aside execution of defendant, Thomas R. Bush, is dismissed for the reasons contained in the annexed opinion.